## SANITARY APPLIANCE CO. et al. v. FRENCH.

### No. 3953.

Court of Civil Appeals of Texas. Amarillo.

Feb. 22, 1933.

Rehearing Denied March 22, 1933.

J. M. Marshall, of Lubbock, and Barkley & Webb, of Houston, for plaintiffs in error.

Lockhart & Brown, of Lubbock, for defendant in error.

HALL, Chief Justice.

The Sanitary Appliance Company and Cullen G. Jackson, hereinafter designated as appellants, sued defendant in error, hereinafter designated appellee, and obtained a temporary injunction against French restraining him from performing certain acts during the pendency of the suit. As required by the court, they executed an injunction bond in the sum of $1,000, payable to French, with the Equitable Casualty & Surety Company as surety thereon. Thereafter the temporary injunction was dissolved and by cross-action French obtained a judgment against the Sanitary Appliance Company and Jackson as principals and the Equitable Casualty & Surety Company as surety, jointly and severally, in the sum of $500, with interest from date of the judgment.

From this judgment the Sanitary Appliance Company and Jackson have prosecuted a writ of error without making the Equitable Casualty & Surety Company a party to the proceedings.

French has filed his motion to have the writ of of error proceedings dismissed for want of jurisdiction on account of the failure of the Sanitary Appliance Company and Jackson to make the Casualty & Surety Company a party thereto.

R. S. art. 2257, provides that a petition for writ of error shall state the names and residences of the parties "adversely interested," shall describe the judgment, etc.

Article 2263 provides: "If it appears from the allegations in the papers of the cause that the party is a non-resident of the State, or if it appears from the return of the sheriff or constable that the party cannot be found in the county of his residence, the citation shall direct the officer to summon the defendant by making service on his attorney of record, if there be one."

In Buttrill et al. v. Occidental Life Ins. Co. (Tex. Civ. App.) 31 S.W.(2d) 833, it appears that the citation in error failed to state the names of all defendants. Judge Looney said: "Plaintiff in error was not required to do other than allege 'the names and residences of the parties adversely interested' * * * and this requirement was complied with. The statute (article 2260) requires that the citation in error state 'the names of the parties' given in the petition but it is evident that provision refers only to parties whose names are required to be

mentioned in the petition; that is, those 'adversely interested.'"

The record shows that, when French filed his cross-action, the Equitable Casualty & Surety Company failed to appear and answer in the court below, and judgment was rendered against it by default, which could be done by express provision of R. S. art. 4649, without the service of citation on the company. Garrett v. Kelley (Tex. Civ. App.) 6 S.W.(2d) 414. The surety company filed no answer and no cross-action against the principals on the indemnity bond to recover over against them whatever amount French might recover against it. Neither has it appealed, but apparently is satisfied with the judgment as rendered below. So upon the face of the record its interest is not adverse to that of plaintiffs in error. The company is a nonresident of this state, and had no attorney representing it in the court below, so no service could be made under article 2263, which provides that, in case of a nonresident defendant, the citation shall be upon its attorney.

It is held that the sureties on a cost bond are not adversely interested to the principal on the bond. Taylor v. Gardner (Tex. Civ. App.) 99 S. W. 411. See Blackman v. Harry (Tex. Civ. App.) 35 S. W. 290.

The surety company, having failed to appear or answer in the trial court, or to prosecute an appeal, has no standing in this court. Wanderlohr v. Grayson County National Bank (Tex. Civ. App.) 102 S. W. 746.

"An adverse party within the meaning of the rule is any party whose interest in the subject-matter of the appeal is adverse to that of appellant or may be affected by a modification or reversal of the judgment or order appealed from." 3 C. J. 1218.

Certain documentary evidence has been filed with the record here, consisting of an order made by the Supreme Court of New York, which is the domicile of the Casualty & Surety Company, dated December 31, 1930, ordering the insurance commissioner of that state to take over the affairs of said company, and, by the terms of the order, the charter of the company is forfeited and the corporation dissolved. It is further ordered that all claims against the company be submitted before January 15, 1931. There is further a duly authenticated order issued out of the same court on February 7, 1933, which certifies to the correctness of the first order. Amongst the documentary evidence filed, we find a statement from the chairman of the board of insurance commissioners of the state of Texas with a copy of the order of the insurance commissioner of New York, from which it appears that the company had been dissolved in that state and that all of its liabilities ceased on the 15th day of January, 1931. But it is not shown that under the laws of the state of New York the company is defunct, so R. S. art. 1390, of Texas, must

control, and it provides that dissolution of a corporation does not abate a suit pending against it.

We overrule the appellee's motion to dismiss the writ of error proceedings.

■ Appellee also moves to strike the appellants' brief because the propositions are mere abstract statements of rules of law, and do not point out any error which has been committed by the court or any one else.

With one exception we find that the propositions are subject to the objection, but, in amending article 1757 prescribing the requisites of a brief, the Forty-Second Legislature, chapter 45 (Vernon's Ann. Civ. St. art. 1757), made no reference whatever to propositions. Because the brief contains assignments of error which sufficiently specify the errors complained of and also contains a "statement and/or argument on the errors assigned," we will consider the assignments of error and treat the propositions as surplusage. Standard et al. v. Texas Pacific Coal & Oil Co. (Tex. Civ. App.) 47 S.W.(2d) 443.

We therefore overrule the appellee's motion to strike the briefs.

The Sanitary Appliance Company, Inc., one of the appellants, entered into a contract with its coappellant Cullen G. Jackson, by the terms of which Jackson was appointed as a general agent for the exclusive sale in certain counties mentioned in the contract of the Sanitary Appliance Company's products. The contract contains, amongst others, the two following stipulations which are material in the consideration of this case:

"8. It is understood that this agreement shall remain in full force and effect until either party hereto shall have given to the other party hereto at least thirty days prior written notice of its intention to terminate this agreement.

"9. Inasmuch as it will be necessary for the manufacturer to furnish the general agent with confidential information concerning its appliances and business, it is agreed that if either party takes advantage of the thirty days notice to discontinue this agreement, that the general agent will not sell any sewerage disposal equipment of any other manufacturer in the above named territory for a period of at least _one year_ subsequent to the termination of this agreement. Also during the life of this agreement it is understood that the general agent will not sell any sewerage disposal equipment other than that of the manufacturer."

Thereafter Jackson entered into a contract with French as subagent, which contains, amongst others, the following provisions:

"Whereas, the said Cullen G. Jackson desires to employ the said W. A. French as a sales representative of the manufacturer subject to the terms, restrictions and conditions of said general agent's contract with

the manufacturer and further subject to the following terms and conditions: * * *

"8. It is understood by all parties hereto and the manufacturer in accepting the instructions and agreements contained in this contract shall accept same with the understanding that this contract shall in no way alter or change the terms of the contract between the manufacturer and the general agent except to the extent of authorizing the manufacturer to pay one-half of the net cash commissions on sales made by the said W. A. French to him and one-half to Cullen G. Jackson.

"9. It is understood that this agreement shall remain in full force and effect until either party hereto shall have given to the other party hereto at least thirty days prior written notice of its intention to terminate this agreement. This agreement, however, shall be immediately terminated upon termination of the general agent's sales contract with the manufacturer."

In their original petition, the appellants, in addition to seeking the injunctive relief, sued appellee to recover $600 which they alleged was the value of certain printed matter, equipment, etc., which they had furnished to him while he was employed by them as salesman, and which he had failed to return upon leaving their employment.

French answered, and by way of cross-action sued the appellants to recover profits which he alleges he lost by reason of being restrained during the pendency of the temporary injunction from carrying on his business. He also sued for $186.46 alleged to be due him as commissions by the appliance company, and for $100 expenses which he alleges the appellants agreed to repay to him for a trip he made from El Paso to Houston. He further sought to recover $2,500 as damages to his financial standing and reputation which he had suffered by reason of the wrongful and malicious acts and slanderous statements on the part of appellants.

No issue was submitted as to the item of $2,500, and the jury in response to special issues found that the reasonable market value of the supplies and equipment which appellants had furnished to appellee and retained by him was $5. The jury further found that appellee sustained loss of profits by reason of the suing out of the writ of injunction in the sum of $500, that the appellant appliance company was due appellee on commissions $182.50, and further found that appellants did not agree to reimburse appellee for the expenses of his trip from El Paso to Houston.

The court rendered a judgment denying the appellants' prayer for injunction, and decreed that appellee recover from appellants and from the cross-defendant Equitable Casualty & Surety Company, jointly and severally, the sum of $500 as lost profits, and recover against the appliance company $182.50 as the balance due appellee on commissions, less a credit of $5, which the jury found to be the value of the supplies retained by appellee.

The first contention to be disposed of is that French had no right to recover upon his cross-action for damages occasioned by the wrongful issuance and service of the injunction because the litigation had not terminated.

This contention is without merit. Where an injunction has been wrongfully issued, the defendant may by proper pleadings recover his damages in the same action or at his option subsequently file a separate suit and recover therefor. Coates v. Caldwell, 71 Tex. 19, 8 S. W. 922, 10 Am. St. Rep. 725; Robertson v. Schneider, 1 Tex. Civ. App. 408, 20 S. W. 1129; Dallas, etc., Bank v. Dallas, etc., Improvement District (Tex. Civ. App.) 2 S.W.(2d) 305; Avery v. Stewart, 60 Tex. 154; 32 C. J. 446, note (m), and authorities cited.

By the second assignment of error the appellants insist that there has been a misjoinder of causes of action.

This contention is overruled. R. S. art. 2015, by express provision authorizes the defendant when sued upon any bond or otherwise to plead any counterclaim he may have against the plaintiff, subject to such limitation as may be prescribed by law, and article 2017 is as follows: "If the plaintiff's cause of action be a claim for unliquidated or uncertain damages, founded on a tort or breach of covenant, the defendant shall not be permitted to set off any debt due him by the plaintiff. If the suit be founded on a certain demand, the defendant shall not be permitted to set off unliquidated or uncertain damages founded on a tort or breach of covenant on the part of the plaintiff. However, the defendant may plead in set off any counterclaim founded on a cause of action arising out of or incident to, or connected with the plaintiff's cause of action."

Under these provisions of the statute the courts have uniformly held that, where the counterclaim or set-off grows out of, is incident to, or connected with, the plaintiff's cause of action, there is no misjoinder, nor can the cross-action be abated because part of the defendant's cause of action may sound both in contract and in tort. According to the allegations of the answer, the appellee's cross-action is not subject to the objection of a misjoinder.

The third assignment of error does not distinctly present any error for consideration.

The only errors which we think require special consideration are that the court erred in overruling the appellant's general demurrer to the cross-action and the failure to instruct the jury to return a verdict for

appellants and against appellee upon his claim for damages by reason of the wrongful suing out of the injunction.

The two contracts were attached to the petition. At the time of the execution of the Jackson-French contract, Jackson's contract with the appliance company was attached to and made a part of the first-mentioned contract. There was no ambiguity in either contract when considered alone or in connection with the other. The contract between Jackson and the appliance company bound Jackson not to sell any sewerage disposal equipment of any other manufacturer in the named territory for a period of at least one year subsequent to the termination of his employment. Jackson's contract with French expressly provided that French as a sales representative of the appliance company should be "subject to the terms, restrictions and conditions of" Jackson's contract with the appliance company, and section 8 provides that all parties, including the manufacturer, shall accept the contract between the manufacturer and the general agent, except in one particular, not relevant to this case.

60 C. J. 673, defines "subject to" as "a phrase that has been variously held to 'mean, affected by, charged with, dependent upon * * * limited by, obedient to, subordinate to, subservient to * * * and employed usually to qualify something substantially already created."

In People's Ice & Manufacturing Co. v. Interstate Cotton Oil Refining Co. (Tex. Civ. App.) 182 S. W. 1163, and in Magnolia Provision Co. v. Coleman (Tex. Com. App.) 3 S.W. (2d) 412, the parties contracted "subject to the rules of" a certain association, and the holding in both cases is that the rules of the association were expressly made parts of the contracts. We think it is clear that French was bound by the restrictive covenant which prohibited him from selling or attempting to sell sanitary appliances for any competing company within twelve months from the date his employment ended, and the court should have so construed the contract and sustained the demurrer to the item of $500 for loss of profits. Wann v. Metropolitan Life Ins. Co. (Tex. Com. App.) 41 S.W.(2d) 50; Bredell v. Fair Grounds Real Estate Co., 95 Mo. App. 676, 69 S. W. 635; Cockerill v. Tobin, 59 Cal. App. 112, 209 P. 1022; In re Hammond's Estate, 197 Pa. 119, 46 A. 935; Auburn & S. Electric Ry. Co. v. Headley, 119 Misc. 94, 195 N. Y. S. 517, 520; Englestein v. Mintz, 345 Ill. 48, 177 N. E. 746, 752; Jennings v. Shepherd Laundries Co. (Tex. Civ. App.) 276 S. W. 726; Byers v. Trans-Pecos Abstr. Co. (Tex. Civ. App.) 18 S.W.(2d) 1096.

In Southern Properties v. Carpenter (Tex. Civ. App.) 21 S.W.(2d) 372, 375, it appears that Carpenter was engaged in a small way in selling ice in the city of Dallas and had established a retail trade territory in the city; that he entered into a contract with the Southern Properties Company by the terms of which the company acquired his equipment used in delivering ice, and it further appears that Carpenter agreed as a part of the same contract not to engage in the business of selling ice within the territory for a period of two years after his employment with the appellant should cease. The court said: "The burden was on appellant, when it sought to enforce this restrictive covenant against appellee, to show that it was both reasonable and necessary to protect it in its contract of purchase of appellee's ice business." And the court further holds that the reasonableness of the restriction was a question of fact for the jury.

In the instant case, the appellants alleged that the contracts contemplated that the general agent and the sales representative would obtain confidential information concerning the apparatus and business of plaintiff, and that it would not be proper, just, or fair for either the general agent or the sales representative to take advantage of the Sanitary Appliance Company by terminating either of said contracts on thirty days' notice and then use said information in selling the products of a competitor or of any other manufacturer, and it was contemplated in the making of said contract between the general agent and the sales representative that the latter would not take advantage of his right to terminate said contract by giving thirty days' notice and then use the confidential information and knowledge obtained through his services under said contracts, by selling and installing the apparatus or equipment of a competitor or of any other manufacturer, and plaintiffs aver that to do so would be unfair, unethical, improper, and in violation of said contracts and each of them.

With reference to the confidential information imparted to French, the general agent Jackson testified that he gave French advance information on the company's products and manufacture of various forms of sewerage disposal equipment, including I. M. Hoff's advance septic tanks, improvements on their chemical toilets, improved Saco pit sanitary toilets, Dossage chambers, and other "things from our production department. From our advertising department he received the benefit of the service of a high-class advertising manager, including cuts, drawings and other things. From the circulation department he received cards and inquiries from the various prospects over the territory, letters from city officials regarding the purchase or contemplated purchase of equipment, blue prints, and other things of a confidential nature, legal forms, contract forms and financial plans, including several plans which fitted the needs

of the various cities, one of which plans originated in the office of the Sanitary Appliance Company which had been worked out by John J. McCall, Mr. Garrett," and the witness in Mr. McCall's office.

If pleadings are necessary, we think they are sufficient to raise the issue of the reasonableness and necessity of the restrictive stipulation, and the evidence tends to show that the restriction was necessary for the protection of the appellant's business. The evidence quoted was not contradicted, and it was therefore not necessary for the issue of the reasonableness and necessity of the restrictive covenant to be submitted to the jury.

As said by Judge Jackson in Garrett v. State (Tex. Civ. App.) 51 S.W.(2d) 822, 825: "Where there is no conflict in the testimony, and no room to doubt or hesitate as to a matter of fact in issue, the Judge, in his charge, ought not to assume that it is or may be doubtful. * * * Where the evidence to a fact is positive and not disputed or questioned, it is to be taken as an established fact; and the charge of the Court should proceed upon that basis." (Citing authorities.)

It follows, therefore, that the appellants did not waive this ground of their action by failing to request the court to submit it to the jury as an issue.

■ The record shows that the conditions existed under the contract, properly construed, which entitled the appellants to the injunction, and that its issuance was not wrongful. If the injunction was rightfully issued, then French could not recover for profits lost during the pendency of the injunction. He could only recover his actual damages where the injunction was issued without probable cause. Hawkins v. Hubbell & Houser, 127 Tenn. 312, 154 S. W. 1146; Hudspeth v. Guggenheim (Tex. Civ. App.) 12 S.W.(2d) 238; Womack v. McMillan (Tex. Civ. App.) 47 S.W.(2d) 437; 32 C. J. 435, § 746.

For the reasons stated, the judgment is reversed, and the cause remanded.

### On Motion for Rehearing.

■ We think we have disposed of all the contentions urged in the motion for rehearing by what we have said in the original opinion, except the additional ground presented as the eighth assignment in the motion, by which it is contended that under the prayer of the plaintiff's petition the court was not authorized to grant a temporary injunction on an ex parte hearing without notice, and, because this was done, the writ was wrongfully issued, and French could recover for profits lost during the period when the injunction was in force.

We overrule this contention. It is clear from the record that French had no right to sell the goods of his employer's competitors until the expiration of twelve months from the date he ceased work for the appellant. Any sales which were made or could have been made by him during the period of restraint were in violation of his contract, and the rule is that one who is restrained by writ of injunction from doing something he had no legal right to do cannot recover damages, though the injunction has been wrongfully issued.

As said in Guthrie v. Biethan, 25 Idaho, 706, 139 P. 718, 719:

"Under the law, a person who has been damaged by reason of having been wrongfully restrained by injunction from doing something that he had a legal right to do may recover what damages he has sustained; but the law does not contemplate that a person may be compensated in damages for being restrained from doing a thing he had no legal right to do, for, if he had no legal right to do the act, he cannot be damaged, and has no cause of action if he be enjoined from doing an illegal act. It is held by very respectable authority that a person restrained from doing what he had no legal right to do has no action for damages, even though the injunction has been wrongfully issued. 22 Cyc. p. 1062; Parks v. O'Connor, 70 Tex. 377, 8 S. W. 104.

"In Sumner v. Crawford (Tex. Civ. App.) 41 S. W. 825, the court held that, where goods are illegally seized under execution, the plaintiff cannot recover damages by reason of an injunction to prevent a sale, sued out by the person entitled to the goods, even if the injunction were not warranted by law.

"It is clear that there must be an unjust restriction of a right to make one liable in damages for suing out a writ of injunction."

See, also, 32 C. J. 436, § 748.

The motion is overruled.